.FILED
SUPERIOR COURT
OF GUAM

2025 NOV 20 PM 3: 52

CLERK OF COURT

BY:_____/born_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GUAM HOUSING AND URBAN RENEWAL AUTHORITY, A Public Body Corporate and Politic,<br><br>                             Plaintiff,<br><br>vs.<br><br>169,795 ± Square Meters of Land in the Municipality of Mangilao, HONG YI TIAN, INC., a Guam Corporation, DR. JOEL JOSEPH, and UNKNOWN OWNERS,<br><br>                          Defendants. | **CIVIL CASE NO. CV0692-24**<br><br><br>**DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendants Dr. Joel Joseph and Hong Yi Tian, Inc. (HYT) challenge the taking of their properties by Plaintiff Guam Housing and Urban Renewal Authority (GHURA). GHURA contends that Guam law grants it the authority to condemn Defendants' properties for a hospital project, despite there being no concurrent plans to build housing units. The Court finds that GHURA's condemnation of the properties exceeds its statutory authority, and therefore, summary judgment is warranted in Defendants' favor.

### I. UNDISPUTED FACTS

The Court finds the following facts to be undisputed based on the pleadings, declarations, and the record:

1. Dr. Joseph claims a fee simple interest in Lots 5328-REM-R2 and 5328-REM-2 in Mangilao. Compl. ¶ 5 (Dec. 18, 2024); Decl. Dr. Joel Joseph ¶ 2 (July 10, 2025).

## ORIGINAL

2. HYT has a fee simple interest in Lots 5327-4-R5, 5327-4-2, 5327-4-3, 5327-4-4, and 5327-4-5 in Mangilao. Compl. ¶ 5; Answer of HYT ¶ 2 (Jan. 14, 2025).

3. GHURA's Board adopted Resolution No. FY2025-009, approving the proposed condemnation of Dr. Joseph and HYT's properties. Decl. Elizabeth F. Napoli, Ex. 1 (Aug. 7, 2025).[1]

4. The resolution indicates that GHURA was offered a loan "for the acquisition of real property for the development of healthcare facilities, and related community development projects" in Mangilao. *Id.* at 1.

5. The resolution cites 12 GCA § 5104(m) as its authority to condemn private property in "connection with any project under 12 GCA Chapter 5." *Id.*

6. GHURA's resolution further declares GHURA was created "to promote the health, safety and welfare of its people by proper planning of community development" and that the condemnation is "for the benefit of the public generally or any substantial segment thereof." *Id.* at 1, 4.

7. GHURA's resolution does not discuss any specific housing plan, though it states that "opportunities for new infrastructure, economic development, and future attainable housing developments would further benefit the community." *Id.* at 2; *see also* Decl. George B. Castro, Ex. A at 19:1-14 (Napoli testifying that housing developments were possible, though not part of the plans).

8. The Medical Campus Master Plan, which the resolution calls "an objective basis for its action," does not reference a housing project. Decl. Elizabeth F. Napoli, Ex. 1 at

---

[1] A legible copy of the resolution is attached to the deposition transcript of GHURA's Executive Director, Elizabeth F. Napoli. *See* Decl. George B. Castro, Ex. A, Ex. 1 (July 10, 2025).

ORIGINAL

1; Ex. 2. GHURA also did not add any low-income housing components to the Medical Campus Master Plan. Decl. George B. Castro, Ex. A at 18:22-25, 19:16-18.

9. GHURA has not made any determination that either Defendant's properties were slums or blighted. *Id.* at 27:7–28:9. Additionally, GHURA determined that because the properties were uninhabited,[2] it could not pursue an "urban renewal" project. Hr'g at 9:30-32; Decl. Vance L. Reklai, SRA, Exs. 1-5 (Aug. 7, 2025) (appraisals indicate vacant lots); Decl. Siska S. Hutapea, Exs. 1-2 (Aug. 7, 2025) (same).

10. GHURA is in the design phase of the hospital's infrastructure. Hr'g at 9:52-53.[3]

11. In the event the properties are determined to be unsuitable for a hospital or housing project, GHURA intends to sell the properties back to the original owners or relist them for sale. *Id.* at 9:51.

## II. **PROCEDURAL BACKGROUND**

GHURA filed this action to finalize the exercise of eminent domain and adjudicate the payment of just compensation to Defendants. *See* Compl. It requested that the Court allow it to deposit $6,653,000.00 as just compensation for the properties. The Court permitted Defendants to lodge objections to the deposit, which neither did. Hr'g (Feb. 12, 2025). The Court therefore ordered the deposit of the funds, which remain on deposit to date. Order for Deposit (Mar. 4, 2025). GHURA claims the deposit effectuated the transfer of title to itself. GHURA's Resp. to Def. Dr. Joel Joseph's Stmt. Undisputed Facts at 2 (Aug. 7, 2025); Hr'g at 9:45 (Sept. 4, 2025).

---

[2] Although the lots are vacant, both Defendants claim to have development plans for their respective properties. Decl. Dr. Joel Joseph ¶ 3 (investments made for crematory and veterinary services); Hr'g at 10:09 (Sept. 4, 2025) (HYT plans to build 64 housing units).

[3] GHURA's counsel represents that GHURA has rezoned the lots to a public use zone. *Id.*

The Court then allowed limited discovery regarding GHURA's authority to condemn the properties. Upon the conclusion of the limited discovery period, Dr. Joseph moved for summary judgment, arguing that GHURA had exceeded its legal authority. Memo. P. & A. in Support of Def. Dr. Joel Joseph's Mot. Summ. J. (July 10, 2025). HYT joined in the motion. Def. HYT's Joinder (Aug. 20, 2025). GHURA opposed it, reasserting its alleged statutory authority to condemn the properties. Memo. Opp'n (Aug. 7, 2025). The Court heard the parties' arguments on September 4, 2025, and took the motion under advisement.

## III. LAW AND DISCUSSION

Dr. Joseph and HYT contend they are entitled to summary judgment in these condemnation proceedings because GHURA exercised its eminent domain powers ultra vires, that is, beyond its authority. In evaluating the parties' arguments, the Court reviews whether the pleadings, affidavits, and discovery record show that there is no genuine issue as to any material fact. Guam R. Civ. P. 56. As the moving party, Dr. Joseph has the initial burden to show that undisputed facts in the record support a prima facie entitlement to relief. *Cho v. Alupang Beach Club, Inc.*, 2025 Guam 3 ¶ 28. However, to defeat the motion, non-movant GHURA must produce at least some significant probative evidence tending to support its position as pled in the complaint. *Id.*

### A. The scope of GHURA's condemnation powers and its purposes.

GHURA argues that 12 GCA § 5104(m) provides it a general power to condemn property for a project aligned with its purposes. Memo. Opp'n at 6. That statute states that GHURA may condemn private property which it "may deem necessary for or in connection with any project" performed under the statute as long as it "first adopt[s] a resolution finding and declaring that the acquisition of such property is necessary for such purposes." 12 GCA § 5104(m). GHURA


ORIGINAL

further cites section 5104(y), which allows it to "carry out housing . . . projects, and in connection therewith plan, prepare, develop, construct, acquire, lease and dispose of any such projects within the contemplation of" GHURA's enabling law. 12 GCA § 5104(y). From these provisions, the Court derives that GHURA must establish that: (1) it is in pursuit of a "project" as defined under Guam law, and (2) the project lies within the confines of GHURA's purpose.

### 1. Definition of "Project"

Defining the term "project," 12 GCA § 5102(a)(13) could not be clearer: "[p]roject means a housing project."[4] In defining "housing project," the law reiterates the emphasis on housing: "any work or undertaking or activity to provide decent, safe and sanitary urban or rural dwellings, apartments, and other living accommodations for families of low income." 12 GCA § 5102(a)(11). The definition of "housing project" continues:

> (A) Such work, undertaking or activity may include buildings, land, equipment, facilities, other real or personal property for necessary, convenient or desirable appurtenances, streets, sewers and other sanitary facilities and services, water supply, utilities, parks, site preparation, landscaping and administrative, community, health, recreational, welfare and similar facilities and services.
>
> (B) The term also extends to the planning of buildings and improvements, the acquisition of property, the demolition of existing structures, the clearance of slum areas, the construction, reconstruction, alteration or repair of the improvements, and all other work in connection therewith, as well as to all other real or personal property and tangible or intangible assets held or used in connection with the housing project.

12 GCA §§ 5102(a)(11). In justifying the condemnation of land for a hospital, GHURA concentrates on the portion of the definition that mentions health facilities and services. 12 GCA § 5102(a)(11)(A).

---

[4] A "project" is also defined as an "urban renewal" project, but GHURA concedes it is not pursuing an urban renewal project. Memo. Opp'n at 5 n.3.

## 2. GHURA's Explicit Purposes

Article 1 of Title 12, Chapter 5, contains an extensive discussion of GHURA's purpose. Setting forth GHURA's priorities, the Legislature's "Declaration of Findings and Policy" focuses on housing, and more specifically, eliminating slum and blighted areas and providing housing for low-income families. 12 GCA § 5101. First, the Legislature echoes national concerns about public welfare and economic health and then states: "There exist in Guam slum and blighted areas, as well as substandard and inadequate housing conditions and a serious shortage of safe, sanitary and decent dwelling accommodations at rentals or prices which families of low income can afford to pay." 12 GCA §§ 5101(a), (b). "These slum and blight conditions, and the continuing shortage of decent housing for low-income families present problems of immediate and long-range governmental concern . . . ." 12 GCA §§ 5101(c).

Next, the law reinforces the intent to address slum and blighted conditions and to provide housing for low-income populations:

> The elimination and prevention of slums and blighted areas, the planning, undertaking and carrying out of urban renewal projects and the provision of safe, sanitary, and decent housing for low-income families in Guam, and during periods of acute need for disaster victims and persons engaged in national defense activities, constitute public uses and public purposes, not competitive with private enterprise, are proper governmental functions, devoted to the health, welfare and safety of the people of Guam, and that the powers conferred by this Chapter are for public uses and purposes for which public money may be expended and private property may be acquired, by eminent domain or otherwise.

12 GCA § 5101(f). Finally, the Declaration provision adopts the "national policy" of "the elimination of slum and blight conditions, by the orderly redevelopment and renewal of communities, by proper planning of community development and by provision of safety, decent and sanitary dwellings for low-income families . . . ." 12 GCA § 5101(g).

ORIGINAL

Notably, GHURA admits that this condemnation has nothing to do with slum and blighted housing areas or conditions. Memo. Opp'n at 5 n.3.

## B. GHURA does not have express powers to condemn property for a hospital project if unconnected to housing.

Having defined necessary terms and explored GHURA's purpose, the Court now turns to whether GHURA has properly exercised eminent domain. When a sovereign exercises eminent domain itself, it has "inherent, necessary, and sweepingly broad" power. *Gov't of Guam v. 16240 Square Meters of Land*, 2011 Guam 17 ¶ 15. But when a legislature delegates eminent domain powers to a government agency, the agency's powers to take private property are not as generous. For delegated eminent domain authority, the taking must be consistent with the purposes of the legislation and strictly construed in favor of the property owner and against the agency. *See, e.g.*, *Dattco, Inc. v. Comm'r of Transp.*, 151 A.2d 823, 826 (Conn. 2016); *Skreden v. Super. Ct.*, 126 Cal. Rptr. 411, 413 (Ct. App. 1975); *City of Birmingham v. Brown*, 2 So.2d 305, 308 (Ala. 1941). In Guam, when strictly interpreting a statute, the Court must "determine whether the language is 'plain and unambiguous' by reference to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶ 23 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

Stated another way, the scope of the delegated power of eminent domain "is not to be inferred from vague and doubtful general phrases" and instead must be express or, at least, necessarily implied.[5] *Providence & Worcester R.R. Co. v. Energy Facilities Siting Bd.*, 899

---

[5] GHURA focuses on its alleged express authority and offers no arguments that it possesses necessarily implied authority. Even if it did, the Court would arrive at the same conclusion. To be necessarily implied, eminent domain powers must relate to the anticipated use of the

N.E.2d 829, 835 (Mass. 2009); *Cent. Puget Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC*, 422 P.3d 891, 899 (Wash. 2018) (en banc); *Skreden*, 126 Cal. Rptr. at 413; *City of Birmingham*, 2 So.2d at 308 ("A grant of the power of eminent domain . . . is limited to the express terms or clear implication of the statute in which the grant is contained."). This means that the delegated eminent domain authority must be exercised only for the purposes the Legislature has provided, and not beyond.

In explaining how a housing agency can condemn land for a hospital, GHURA zeroes in on how the definition of "housing project" law includes "health . . . facilities and services." 12 GCA § 5102(a)(11)(A). But those terms may not be viewed in isolation and must rather be examined within the full context of GHURA's powers. *Barrett-Anderson*, 2015 Guam 20 ¶ 23 ("in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy").

Guam law permits GHURA to develop a "housing project," but when defining that term, the Legislature first and foremost explained it meant "dwellings, apartments, and other living accommodations for families of low income." 12 GCA § 5102(a)(11). The law mentions the inclusion of other facilities—"water supply, utilities, parks, site preparation, landscaping and administrative, community, health, recreational, welfare and similar facilities and services"—but when read in full, the law incorporates those appurtenances as part of the work aimed to provide decent, safe and sanitary housing facilities. 12 GCA § 5102(a)(11)(A). In other words, as

---

condemned property. *See Dep't of Transp. v. Stapleton*, 97 P.3d 938, 942 (Colo. 2004) (en banc) (must be a "sufficiently direct functional relationship"); *Ariz. Foothills Unified Sch. Dist. No. 18 v. La Paloma Prop. Owners Ass'n*, 363 P.3d 127, 131 (Ariz. App. 2015) ("There can be no implication unless it arises from a necessity so absolute that, without it, the grant itself will be defeated."). As discussed herein, because there is no housing project in the works, GHURA exceeded its authority by condemning land for non-housing purposes.

ORIGINAL

defined, a housing project must involve housing. Accordingly, GHURA's eminent domain power must be exercised in connection with a housing project, rather than stand-alone facilities unrelated to a housing project.

This interpretation of GHURA's powers reflects the Legislature's Declaration of GHURA's purpose. *See* 12 GCA § 5101. As noted above, GHURA states that it did not condemn Dr. Joseph's or HYT's properties in order to eliminate slums or blighted areas, nor in pursuit of any urban renewal project; rather, it claims to have broad community development powers. However, the elimination and rehabilitation of slums and blighted areas are the specific purposes prescribed for GHURA by the Legislature. *Id.* With the elimination of slums and blighted areas, GHURA is then tasked with supplying homes for low-income households. 12 GCA §§ 5101(a), (b), (c), (f), (g) (all discussing housing needs).

The undisputed facts of this case show that there was no housing project underway when GHURA resolved to take Dr. Joseph's and HYT's private property. GHURA had the burden to demonstrate that it adhered to its purposes and its authority, but failed to provide the Court with evidence that building housing (let alone housing for low-income households) formed part of its objective in condemning Dr. Joseph and HYT's properties. At most, GHURA considered larger infrastructure projects capable of servicing the hospital, and *perhaps* later, a housing development. But when reviewing GHURA's powers in the entire context of its enabling statute, the Court finds the express confines of GHURA's condemnation of land to developing housing and other buildings in support of that housing—not appurtenances first and then potentially housing in the future to accompany the other facilities.

Moreover, even if it can be argued that there is a question of whether GHURA can condemn property for a health facility without also having a plan to build housing, those doubts


ORIGINAL

must be construed against GHURA. "Any fair, reasonable and substantial doubt about the existence of a power in a municipal corporation must be resolved against it." *City of Little Rock v. Raines*, 411 S.W.2d 486, 491 (Ark. 1967) (city acted ultra vires in taking property). Instead, the Court must strictly interpret eminent domain statutes in favor of private landholders, given that takings are in derogation of private property rights. *Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 579 (Pa. 2014) (strictly construing statutes to find agency exceeded its condemnation authority); *Dattco, Inc.*, 151 A.2d at 826 (same); *City of Little Rock*, 411 S.W.2d at 491. "When the state elects to take private property without the owner's consent, simple justice requires that the state proceed with due concern for the venerable rights it is preempting." *Norwood v. Horney*, 853 N.E.2d 1115, 1128-29, 1137-38 (Ohio 2006) (reviewing the right to property as a fundamental right).

In summary, in reviewing GHURA's condemnation rights under section 5104(m) and the full context of what projects GHURA may pursue under Title 12, Chapter 5, Article 1 of the Guam Code Annotated, the Court finds GHURA is developing a project outside of its defined authority and beyond its purposes. Also, even if there are doubts as to whether GHURA is acting within its authority, the Court must conclude in favor of the landowners and determine that GHURA lacks the claimed powers. Having found that GHURA is acting ultra vires, the Court determines that GHURA cannot condemn private property for the hospital project.

**C. GHURA's ventures into community development projects are not relevant.**

As a final point, the Court addresses GHURA's arguments that its usual business includes community development projects such as medical clinics. Decl. Elizabeth F. Napoli ¶ 4; Hr'g at 9:41. Likewise, in its resolution, GHURA implied that it has broad powers to implement community development projects. Decl. Elizabeth F. Napoli, Ex. 1 at 1. GHURA also admits,


ORIGINAL

however, that in pursuing community development projects, it has never had to condemn private

land before. Hr'g at 9:42.

Unlike those other community development projects, the critical distinction here is the

condemnation of private property. When condemning private property, a government agency

may exercise only those powers granted to it. As noted before, this principle stems from a

veneration for property rights. As articulated by the United States Supreme Court,

> property is more than the mere thing which a person owns. It is
> elementary that it includes the right to acquire, use, and dispose of it. The
> Constitution protects these essential attributes of property. Property
> consists of the free use, enjoyment, and disposal of a person's acquisitions
> without control or diminution save by the law of the land.

*Buchanan v. Warley*, 245 U.S. 60, 74 (1917). The Court also notes concerns by other courts that

"a grant of the power of eminent domain . . . is one of the attributes of sovereignty most fraught

with the possibility of abuse and injustice." *City of Birmingham*, 2 So.2d at 308; *Norwood*, 853

N.E.2d. 1118; *see also Wise v. Yazoo City*, 51 So. 453, 455 (Miss. 1910) (delegated eminent

domain powers "deserve[] no favor. To construe it liberally would be sinning against the rights

of property"). These values and principles surrounding private property and the perils of

eminent domain overreach differentiate this land acquisition from GHURA's past voluntary land

transactions pursued for non-housing-related projects. In this case, a government agency is

interfering with private land ownership and use; the question over the legality of that act compels

a different lens from that used when a government agency decides to use its own property or

property it acquired voluntarily.

This Court takes no position on whether GHURA has acted within its statutory authority

in pursuing non-housing-related projects in general. However, when it comes to this particular

ORIGINAL

taking of land for a non-housing-related project, the Court maintains a strict construction approach and finds that GHURA acted ultra vires.

## IV.   **CONCLUSION**

The Legislature did not delegate broad powers to GHURA to condemn property at its discretion. Rather, its exercise of eminent domain is limited to condemning land for projects involving housing, and facilities adjunct to housing projects. Because that did not occur here, the Court GRANTS the motion for summary judgment in favor of the condemnees.

A Judgment shall issue, as well as a separate Order returning the deposited funds.

**SO ORDERED, 20 November 2025.**

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Eliseo M. Florig, Jr., Esq., for Plaintiff Guam Housing and Urban Renewal Authority
Mitchell F. Thompson, Esq., Thompson Thompson & Alcantara, P.C., for Defendant Dr. Joel
    Joseph
Jacqueline Taitano Terlaje, Esq., Law Office of Jacqueline Taitano Terlaje, P.C., for Defendant
    Hong Yi Tian, Inc.

ORIGINAL